# Solid Waste Services Inc. v. City of Allentown

C.P. of Lehigh County, no. 2001-E-0059.

*Albert A. DeGennaro* and *William F. Fox Jr.,* for plaintiffs.

*Malcolm J. Gross* and *Frances P. Burianek,* for defendant City of Allentown.

*John Stoviak, Douglas Jon Tkacik* and *Elizabeth Utz Witmer,* for defendant Waste Management.

BRENNER, *Chancellor in Equity,* April 15, 2002—On or about November 9, 2001, plaintiffs, Solid Waste Services Inc. d/b/a J. P. Mascaro & Sons, M. B. Investments and Francine Ambrosino commenced this equity action by filing a complaint[1] and request for permanent injunctive relief to have the defendant, the City of Allentown, enjoined from entering into and/or carrying out a contract with defendant Waste Management of Pennsylvania Inc. Specifically, in their complaint, the plaintiffs request from this court permanent injunctive relief to invalidate the City of Allentown's award of the solid waste collection and recycling contract to Waste Management based on five allegations of deficiencies in Waste Management's bid and/or the City of Allentown's com-

---

1. On December 19, 2001, the plaintiffs filed an amended complaint.

pliance with the bid solicitation no. 2001-70, Municipal Solid Waste and Recycling Collection Services: (1) Waste Management improperly bid compaction-type vehicles to collect recyclables; (2) Waste Management did not include a manufacturer's delivery guarantee; (3) Waste Management did not submit a description of a safety training program with its bid; (4) Waste Management failed to identify that 50 percent of its trucks would be new and 50 percent would not be older than three years; and (5) the City of Allentown selected a one-year term for the collection of solid waste and recyclables at the city facilities in determining the low bidder.

A hearing on the plaintiffs' preliminary injunction request was held on November 20, 2001. This court denied the plaintiffs' petition for a preliminary injunction on the same date. Thereafter, on March 18, 2002, this court conducted a non-jury trial before the Honorable Lawrence J. Brenner. Based upon the evidence presented at the trial,[2] the pleadings and record papers, we make the following findings.

## FINDINGS OF FACT

(1) Plaintiff Solid Waste Services Inc. d/b/a J.P. Mascaro & Sons is a Pennsylvania corporation with offices located at 315 Basin Street, Allentown, Lehigh County, Pennsylvania. (N.T. 11/20/01, p. 20.) J.P. Mascaro pays the City of Allentown business privilege tax. (N.T. 11/20/01, pp. 22, 54; P. exhibit 1.)

---

2. The entire record from the preliminary injunction hearing held on November 20, 2001, was incorporated into the record of the non-jury trial by stipulation of all the parties. (N.T. 3/18/02, pp. 6-7.)

(2) Pasquale N. Mascaro is the president of J.P. Mascaro and is a 20 percent shareholder in the company. (N.T. 11/20/01, pp. 17-18.)

(3) Plaintiff M.B. Investments is a Pennsylvania partnership that owns the property located at 315 Basin Street, Allentown, Lehigh County, Pennsylvania. (N.T. 11/20/01, pp. 18-20, 53.) M.B. Investments pays the City of Allentown real estate taxes. (N.T. 11/20/01, pp. 23, 54, 89; P. exhibit 2.)

(4) Plaintiff Francine Ambrosino is an adult individual and a taxpayer of the City of Allentown, owning real estate located at 2434 West Union Street, Allentown, Lehigh County, Pennsylvania. (P. exhibit 10; P. exhibit 11; N.T. 11/20/01, pp. 166-69.) As a resident of the City of Allentown, Ms. Ambrosino pays the annual trash and refuse collection fee of $160. (N.T. 11/20/01, p. 170.) Ms. Ambrosino is an employee of J.P. Mascaro. (N.T. 11/20/01, p. 171.)

(5) Defendant, the City of Allentown, is a third-class city organized and existing under the laws of the Commonwealth of Pennsylvania with offices located at 435 Hamilton Street, Allentown, Lehigh County, Pennsylvania, and is governed by the third-class cities code, as well as by the City of Allentown Home Rule Charter. (City of Allentown Home Rule Charter, adopted on April 23, 1996.)

(6) Defendant Waste Management is a Pennsylvania corporation with offices at 1963 Pen Argyl Road, Pen Argyl, Northampton County, Pennsylvania.

(7) Plaintiff J.P. Mascaro and defendant Waste Management are in the solid waste industry. Specifically, they

engage in the collection, transportation, processing, transfer, disposal and composting of solid waste and recyclables in the private and public sectors. (N.T. 11/20/01, p. 18.)

(8) Since 1986, J.P. Mascaro has provided such services for the City of Allentown. (N.T. 11/20/01, pp. 19, 24.) J. P. Mascaro is the current contractor for the City of Allentown's solid waste collection and recycling contract. (N.T. 11/20/01, p. 24; N.T. 3/18/02, pp. 120- 21.)

(9) The services which J.P. Mascaro provides to the City of Allentown are provided pursuant to the public bidding process. (Section 1815 of the City of Allentown Home Rule Charter adopted on April 23, 1996.) Specifically, where the services sought, such as municipal waste collection, are in excess of $20,000, the City of Allentown is required to solicit bids for such services and award those bids to the lowest responsible bidder. (Section 1815 of the City of Allentown Home Rule Charter adopted on April 23, 1996.)

(10) The current solid waste collection and recycling contract between the City of Allentown and J.P. Mascaro expires on June 1, 2002. (N.T. 11/20/01, p. 24; N.T. 3/18/02, pp. 39-40.) Therefore, in August of 2001, the City of Allentown advertised and issued bid solicitation no. 2001-70, municipal solid waste and recycling collection services. (P. exhibit 3; city exhibit 1; N.T. 11/20/01, p. 25.)

(11) The City of Allentown hired Wayne DeFeo, an independent consultant, in February of 2001 in order to assist in the preparation of bid solicitation no. 2001-70, municipal solid waste and recycling collection services. (N.T. 3/18/02, pp. 41-42, 130.)

(12) The main objective of the bid specifications was to attain the best solid waste collection and recycling service for the residents of the City of Allentown at the lowest cost to them. (N.T. 3/18/02, p. 41.)

(13) The City of Allentown opened the bids on October 3, 2001. (N.T. 3/18/02, pp. 54, 119; city exhibit 4.)

(14) Bids were received by the City of Allentown the first week of October of 2001. (N.T. 11/20/01, p. 25.)

(15) Waste Management, J.P. Mascaro, Raritan Valley and IESI responded to bid solicitation no. 2001-70, municipal solid waste and recycling collection services. (N.T. 11/20/01, p. 26.)

(16) Section 1.7(d) of bid solicitation no. 2001-70 states:

"All bidders shall submit with his proposal, a description of all equipment to be used in the performance of the proposed contract. Each bidder must specify the number and type of all collection truck bodies, cabs and chassis and other equipment as specified in section 4.3. The bidder shall supply detailed inventories, including photographs of the equipment currently owned or leased and all accessories by type, model, year of manufacture, and anticipated remaining useful life as of the date of the inventory sheet. All leased equipment shall be listed separately; the time remaining on each leased piece of equipment and options of renewal, where applicable, shall be stated. Complete descriptions of all new equipment to be acquired to accomplish this contract must be provided. *Delivery guarantees by manufacturers shall be attached to the bid document.*" (P. exhibit 3; city exhibit 1; section 1.7(d) of bid solicitation 2001-70. (emphasis supplied)

(17) The purpose of requiring a delivery guarantee to be attached to the bid documents is to assure that any new equipment that is purchased will be delivered on time prior to the performance of the contract. (N.T. 3/18/02, pp. 13-14.)

(18) Waste Management attached to the bid documents an October 2, 2001 letter delivery guarantee from Dempster Equipment, which is a manufacturer of recycling vehicles: "The following is to acknowledge that Dempster Equipment will be able to deliver six Dempster Recycle trucks to Allentown, PA by the required date to meet a June 1, 2002 start-up at that facility." (P. exhibit 6; N.T. 11/20/01, p. 49.) In particular, Dempster Equipment manufactures the body of the vehicle. (N.T. 11/20/01, pp. 49-50, 66, 114, 128, 204.)

(19) Waste Management also attached to the bid documents an October 2, 2001 letter delivery guarantee from McNeilus Companies Inc., a manufacturer of the body of the vehicles:

"The following letter is to acknowledge that McNeilus Companies Inc. will provide delivery of eight 32 cubic yard McNeilus rear loaders and three 25 cubic yard McNeilus rear loaders to your Allentown, PA facility prior to a required contract start-up date of June 1, 2002. Purchase orders and chassis will need to be provided to McNeilus Companies Inc. no later than April 1, 2002." (City exhibit 6.)

(20) In practice, delivery guarantees are sought from the manufacturer of the body of the vehicle and not the manufacturer of the vehicle's chassis, as a manufacturer is not going to deliver a body without a chassis attached

to it. (N.T. 3/18/02, pp. 151, 169, 173, 175-76, 200- 201.) In other words, the guarantee is given for the entire vehicle and not each component part. (N.T. 3/18/02, pp. 155, 175-76, 200-201.)

(21) Section 4.2(a) of bid solicitation 2001-70 provides:

"Bidders shall submit a *description* of a safety training program with regard to all employees engaged in the collection or transportation of solid waste or recycling within the City of Allentown. At a minimum, a safety program shall include training components which comply with the following mandatory and industry recommended safety standards as found in the latest version of US DOT, PA DOT, OSHA and ANSI Z245 industry standards, with regard to the following training areas:

• Commercial motor vehicle operations

• Collection crew safety

• Commercial container handling

• Collection and transfer vehicles

• Unloading procedures at treatment, processing and disposal facilities." (P. exhibit 3; city exhibit 1; section 4.2(a) of bid solicitation 2001-70.) (emphasis supplied) The aforementioned provision does not require that a complete safety plan be submitted by each bidder, but instead requires the submission of a general description of a safety plan. (N.T. 11/20/01, pp. 239, 269, 274; N.T. 3/ 18/02, pp. 145-46.) Such general language aids in opening the bidding field to a wide audience. (N.T. 11/ 20/01, p. 273; N.T. 3/18/02, p. 146.)

(22) The purpose of section 4.2(a) of bid solicitation 2001-70 was to assure that the bidders are responsible

trash haulers with a concern for safety. (N.T. 11/20/01, p. 274.)

(23) In response to section 4.2(a) of bid solicitation 2001-70, Waste Management indicated:

"Attached you will find our general training guidelines for health, safety and transportation.

"A specific plan will be developed which adheres to these guidelines and is tailored to the Allentown city contract. Such plan will be submitted to the city for review and comment prior to start-up." (P. exhibit 6; N.T. 11/20/01, p. 221.) Thereafter, Waste Management attached a two-page description of its safety plan. (P. exhibit 6; city exhibit 6.)

(24) With regard to equipment, section 4.3(b) of bid solicitation 2001-70 provides as follows:

"At the beginning of the contract period, at least one-half of the packer and recycling collection vehicles (and boxes) must not be older than three years; and one-half of the packer and recycling collection vehicles (and containers if applicable) shall be new." (P. exhibit 3; city exhibit 1; section 4.3(b) of bid solicitation no. 2001-70.)

(25) Section 4.3(g) of bid solicitation no. 2001-70, municipal solid waste and recycling collection services, indicates that half of *all designated vehicles* must be new 2002 models, while the other half must not be older than 1999 models. (Section 4.3(g) of bid solicitation no. 2001-70; city exhibit 1; P. exhibit 3; N.T. 3/18/02, pp. 147, 226.) In response to this criterion, Waste Management bid nine 2002 model vehicles, four 2000 model vehicles and five 1999 model vehicles.[3] (City exhibit 6.)

_____

3. Specifically, Waste Management bid two new 2002 Mack LE613 chassis with Recycle Pac II bodies, seven new 2002 Mack MR688S

234

(26) Overall, one-half of the vehicles bid by Waste Management are new and one-half of the vehicles are not older than three years.

(27) Waste Management responded to the City of Allentown's bid solicitation no. 2001-70, with a bid of $12,797,065.60. (P. exhibit 6; city exhibit 10; N.T. 3/18/02, pp. 55-56.) Waste Management bid compaction capable vehicles for the collection of commingled recyclables. (P. exhibit 6; N.T. 11/20/01, pp. 47-48, 146; N.T. 3/18/02, p. 107.)

(28) Specifically, Waste Management's bid provides for five Mack chassis with Recycle Pac bodies. (N.T. 11/20/01, pp. 48-49.) Of the five vehicles Waste Management designated in its bid for commingled recyclable collection, two of the vehicles would be new 2002 Recycle Pac II models, two of the vehicles would be 2000 Recycle Pac models and one of the vehicles would be a 1999 Recycle Pac model. (P. exhibit 6; N.T. 11/20/01, pp. 127, 206.)

(29) Recycle Pac and Recycle Pac II vehicles are designed to collect commingled recyclables and are not designed to compact solid waste. (N.T. 11/20/01, pp. 67, 74-75, 80-81, 100, 125, 154-56, 160, 192; N.T. 3/18/02, pp. 143, 189.) Compaction vehicles are designed for high

chassis with McNeilus bodies, two 2000 model Mack LE613 chassis with Recycle Pac bodies, one 2000 model Rat Pack rear loader, one 2000 model Mack MR688S chassis with McNeilus body, one 1999 model Mack LE613 chassis with Recycle Pac body, three 1999 model Mack MR688S chassis with Dempster body and one 1999 model Mack chassis with stake body. (City exhibit 6.) Therefore, Waste Management proposed a total of nine 2002 model vehicles, four 2000 model vehicles and five 1999 model vehicles.

production, high density work and are more cost effective than non-compaction vehicles. (N.T. 11/20/01, pp. 38, 51, 81-82, 185; N.T. 3/18/02, pp. 190, 193.)

(30) Vehicles designed to collect solid waste compact materials much tighter than vehicles designed to compact commingled recyclables. (N.T. 11/20/01, pp. 160-61, 181; N.T. 3/18/02, pp. 139-41, 143.) Collecting commingled recyclables in a vehicle designed to compact solid waste would render the commingled recyclables non-marketable. (N.T. 11/20/01, p. 181; N.T. 3/18/02, pp. 139-41, 143.)

(31) J.P. Mascaro responded to the City of Allentown's bid solicitation no. 2001-70 with a bid of $12,928,550.[4] (N.T. 11/20/01, p. 25; city exhibit 10; N.T. 3/18/02, p. 56; city exhibit 7.) In its bid, J. P. Mascaro designated all non-compaction-type recycling vehicles. (N.T. 11/20/01, p. 37; city exhibit 7.) Non-compaction vehicles do not carry as much material and have a higher loading height. (N.T. 11/20/01, pp. 37-38, 51; N.T. 3/18/02, p. 193.) However, non-compaction vehicles are less expensive. (N.T. 3/18/02, pp. 201-203.) Currently, J.P. Mascaro does not operate any Recycle Pac or Recycle Pac II compaction-type vehicles. (N.T. 11/20/01, pp. 87, 99, 138.)

(32) Raritan Valley and IESI submitted bids to the City of Allentown designating compaction-type vehicles.

---

4. Section 815(F) of the City of Allentown's Home Rule Charter and section 1.18 of bid solicitation no. 2001-70, municipal solid waste and recycling collection services, provide for a resident preference in its bidding process. (City of Allentown Home Rule Charter, adopted on April 23, 1996; P. exhibit 3; city exhibit 1; section 1.18 of bid solicitation no. 2001-70). J. P. Mascaro received a $2,500 credit as an in-city bidder. (N.T. 11/20/01, pp. 31, 35, 218-19.)

236

(N.T. 11/20/01, pp. 26, 84, 282; N.T. 3/ 18/02, pp. 54, 56, 142; city exhibit 8; city exhibit 9.)

(33) Section 3.3(d) of bid solicitation no. 2001-70 states:

"Commingled recyclables shall be collected in closed recycling trucks and transported directly from curbside to Todd Heller Inc., Northampton, PA, 610-262-6988. A site visit by prospective bidders is recommended. *Commingled recyclables may not be collected in vehicles designed to compact materials or with compaction specifications that could crush or otherwise render the recyclable material non-marketable.*" (P. exhibit 3; city exhibit 1; section 3.3(d) of bid solicitation 2001-70.) (emphasis supplied)

(34) Section 4.3(g) of bid solicitation no. 2001-70 provides in pertinent part:

"*Commingled recyclables may not be collected in vehicles designed to compact solid waste or with compaction specifications that could crush or otherwise render the recyclable materials non-marketable.* All recycling collection vehicles shall be completely enclosed and shall be designed to prevent spillage of recyclables." (P. exhibit 3; city exhibit 1; section 4.3(g) of bid solicitation no. 2001-70.) (emphasis supplied) On July 24, 2001, the consultant, Wayne DeFeo, advised the City of Allentown that certain recycling vehicles have some light or modest compaction qualities and recommended that the aforementioned language be used in bid solicitation no. 2001-70. (N.T. 3/18/02, pp. 45, 99-100, 135-36, 138, 182-83; city exhibit 14.)

(35) Sections 3.3(d) and 4.3(g) of bid solicitation no. 2001-70 both recognize marketability of commingled recyclables as the key element. (P. exhibit 3; city exhibit 1; sections 3.3(d) and 4.3(g) of bid solicitation 2001-70.)

(36) On September 13, 2001, the City of Allentown issued an addendum number 2 in order to clarify certain issues. (City exhibit 1.) One issue that arose dealt with the collection of recyclables:

"Question: Section 3.3d of the instructions for bidding—recycling trucks—with regard to compaction, clarification is needed on compaction specifications that are acceptable. We currently use compaction vehicles for recycling collection.

"Answer: As stated in section 4.3g, *'Commingled recyclables may not be collected in vehicles designed to compact solid waste or with compaction specifications that could crush or otherwise render the recyclable materials non-marketable.'* Todd Heller Inc., our designated market for commingled recyclables, will not accept compacted recyclables. Compaction capable vehicles are permitted for paper collections." (City exhibit 1; city exhibit 3.) The addendum contains a clause that states, "[t]he provisions of this addendum shall take precedence over all other contract documents whenever they conflict." (City exhibit 1, city exhibit 3; N.T. 11/20/01, pp. 223-24; N.T. 3/18/02, pp. 49-50, 53.) Addendum no. 2 was generated as a result of questions that arose from the mandatory pre-bid conference held on September 6, 2001, at which all prospective bidders for the municipal solid waste and recycling contract were required to appear.

(37) The City of Allentown wanted to prohibit a contractor from utilizing rear load compacting garbage vehicles to collect the City of Allentown's commingled recyclables. (N.T. 11/20/01, pp. 236, 249; N.T. 3/18/02, pp. 43, 46, 136.) The desired prohibition stemmed from the fact that the compaction rate on a garbage truck is substantially greater than the compaction force on a recycling vehicle. (N.T. 3/18/02, pp. 139-41, 143, 189.) Indeed, the compaction rate on a garbage truck would render the commingled recyclables non-marketable. (N.T. 11/20/01, pp. 249-50; N.T. 3/18/02, pp. 139-41, 143.)

(38) However, in bid solicitation no. 2001-70, the City of Allentown did not want to prevent the contractor from utilizing recycling vehicles with modest compaction capabilities that do not crush the commingled recyclables to the degree that they are rendered non-marketable. (N.T. 11/20/01, p. 236; N.T. 3/18/02, pp. 143, 191.)

(39) The City of Allentown has contracted with Todd Heller Inc. to accept the commingled recyclables that are collected from the City of Allentown. (N.T. 11/20/01, pp. 75-76, 177.)

(40) Todd Heller Inc. accepts commingled recyclables that are collected in a Recycle Pac and Recycle Pac II compaction vehicle. (N.T. 11/20/01, pp. 76, 178; N.T. 3/18/02, p. 221.) Crushed plastics are still marketable (N.T. 11/20/01, pp. 158, 180; N.T. 3/18/02, p. 191). There is always some degree of glass breakage, as breakage occurs even in open non-compaction vehicles. (N.T. 11/20/01, pp. 158-59, 181-82, 188; N.T. 3/18/02, p. 144.)

(41) The marketability of materials coming out of a Recycle Pac compaction vehicle and the older style ve-

hicle is basically equivalent. (N.T. 11/20/01, pp. 182-83; N.T. 3/18/02, pp. 144, 191.)

(42) The lowest bid will be determined by the total of the base bid and any options selected by the City of Allentown at the time of award. (P. exhibit 3; city exhibit 1; section 1.13(c) of bid solicitation no. 2001-70.)

(43) The base bid includes curbside solid waste collection and disposal and curbside recycling collection. (N.T. 11/20/01, pp. 31, 104, 252-53.)

(44) Optional services include yard waste collection, mayfair, wine/dine, sportsfest, collection of trash and recyclables from city facilities and on-call dumpsters. (P. exhibit 3; city exhibit 1; section 3.5(a)-(f) of bid solicitation no. 2001-70; N.T. 11/20/01, pp. 255-56.)

(45) Waste Management was the lowest bidder. (N.T. 3/18/02, pp. 55-56, 111.) In fact, Waste Management's bid was $131,484.40 lower than J. P. Mascaro's bid for the municipal solid waste and recycling collection services. (City exhibit 10; N.T. 3/18/02, p. 57.)

(46) On October 18, 2001, the City of Allentown awarded the solid waste collection and recycling contract to Waste Management, for a two-year term, commencing on June 1, 2002. (N.T. 11/20/01, pp. 34, 214; P. exhibit 7; city exhibit 11; city exhibit 12.)

(47) The City of Allentown chose a one-year term for the city facility trash and recycling collection service option. (N.T. 11/20/01, pp. 34, 214; P. exhibit 7.)

(48) The reason the City of Allentown chose a one-year term for the city facility trash and recycling service option was that the City of Allentown wanted to study

whether it could internally handle the city facility trash and recycling collection on a more cost efficient basis than under the public contract. (N.T. 11/20/01, pp. 214-15.)

(49) Bid solicitation no. 2001-70 does not require the City of Allentown to award a service option for the same term as the base contract. Instead, section 1.13(b) of bid solicitation no. 2001-70 confers to the City of Allentown the right to award or reject any and all options:

"1.13 Award criteria

"(a) The city reserves the right to reject any and all offers and to waive informalities and minor irregularities in offers received.

"(b) *The city reserves the right to award or reject any or all options.* The city also reserves the right to award options and/or contract extensions at a later date to the successful bidder.

"(c) The lowest bid will be determined by the total of the base bid and any options selected by the city at the time of award.

(d) The city, at its discretion only, may, at its option, add services to or delete services at any time from the work provided by this contract as may serve its best interest. The resulting increase or decrease will be negotiated between the contractor and the city." (City exhibit 1; P. exhibit 3; section 1.13 of bid solicitation no. 2001-70.) (emphasis supplied) In fact, the City of Allentown has the right to award options at a later date and to add or delete services from the contract at any time as may serve the interests of the City of Allentown. (P. ex-

hibit 3; city exhibit 1; section 1.13(d) of bid solicitation no. 2001-70.)

(50) Furthermore, the use of the one-year city facility trash and recycling service option term to determine bid prices was applied uniformly to all four bidders.

(51) Even if the City of Allentown had chosen a two-year term for the city facility trash and recycling service option, Waste Management would still have been the lowest bidder. (Waste Management exhibit 3; N.T. 11/20/01, p. 218.)

## CONCLUSIONS OF LAW

(1) Waste Management's bid did not identify improper vehicles for use in the recycling program. The designation by Waste Management of the Recycle Pac and Recycle Pac II vehicles for the collection of commingled recyclables is in accordance with the City of Allentown's bid solicitation no. 2001-70, municipal solid waste and recycling collection services, and does not constitute a bid defect.

(2) Waste Management attached all required manufacturer delivery guarantees necessitated by section 1.7(d) of bid solicitation no. 2001-70, municipal solid waste and recycling collection services, as section 1.7(d) of bid solicitation no. 2001-70 does not require delivery guarantees from the manufacturers of the chassis.

(3) Waste Management's bid contained a description of a safety training program that complies with section 4.2(a) of bid solicitation no. 2001-70, municipal solid waste and recycling collection services.

(4) Waste Management properly identified one-half of the vehicles bid as new and one-half of the vehicles as not older than three years, in compliance with section 4.3(b) of the City of Allentown's bid solicitation no. 2001-70, municipal solid waste and recycling collection services.

(5) Waste Management's bid fully complied with the City of Allentown's bid solicitation no. 2001-70, municipal solid waste and recycling collection services.

(6) Waste Management was the lowest responsible bidder.

(7) The City of Allentown's award of a one-year term for the city facility trash and recycling service option was appropriate and within its discretion.

(8) The City of Allentown acted in good faith and in the best interests of the municipality in awarding the solid waste collection and recycling contract to Waste Management.

(9) The City of Allentown did not abuse its discretion in awarding the solid waste collection and recycling contract to Waste Management.

(10) No competitive advantage was conferred to Waste Management as a result of the City of Allentown's bid solicitation no. 2001-70, municipal solid waste and recycling collection services.

(11) Plaintiffs have not sustained their burden in establishing that a permanent injunction is warranted.

## DISCUSSION

Initially this court notes that a court may grant the extraordinary relief of a permanent injunction only where

the rights of the plaintiffs are clear and free from doubt and the harm the plaintiffs seek to remedy is great and irreparable. *Kimmel v. Lower Paxton Twp.,* 159 Pa. Commw. 475, 481, 633 A.2d 1271, 1274 (1993). In addition, a court may enjoin the award of a public contract when material irregularities are shown in the bidding process. *American Totalisator Co. Inc. v. Seligman,* 489 Pa. 568, 576-77, 414 A.2d 1037, 1041 (1980).

Further, this court recognizes that there is a presumption that the public officials charged with the duty of awarding a contract acted in good faith and in the best interest of the municipal authority in making the award, and such award will not be set aside except upon clear proof of an abuse of discretion or a purely arbitrary execution of the municipality's duties or functions. *A. Pickett Construction Inc. v. Luzerne County Convention Center Authority,* 738 A.2d 20, 24 (Pa. Commw. 1999); *Kimmel,* 159 Pa. Commw. at 481, 633 A.2d at 1274. This heavy burden of proving that the municipal authorities abused their discretion and did not act in good faith or in the best interests of the municipality in awarding a contract is on the party challenging the award. *J.J.D. Urethane Co. v. Montgomery County,* 694 A.2d 368, 370 (Pa. Commw. 1997). Moreover, in reviewing the acts of a municipal authority, judicial discretion may not be substituted for administrative discretion. *American Totalisator Co.,* 489 Pa. at 575, 414 A.2d at 1041. With these standards in mind, we address plaintiffs' request for permanent injunctive relief.

The plaintiffs request from this court permanent injunctive relief to invalidate the City of Allentown's award

of the solid waste collection and recycling contract to Waste Management based on five allegations of deficiencies in Waste Management's bid and/or the City of Allentown's compliance with the bid solicitation no. 2001-70, municipal solid waste and recycling collection services:

Firstly, plaintiffs argue that Waste Management's bid is fatally flawed because Waste Management intends to utilize compaction-type vehicles for the collection of the commingled recyclables, in contravention of section 3.3(d) of bid solicitation no. 2001-70. Section 3.3(d) of bid solicitation no. 2001-70 states:

"Commingled recyclables shall be collected in closed recycling trucks and transported directly from curbside to Todd Heller Inc., Northampton, PA, 610-262-6988. A site visit by prospective bidders is recommended. *Commingled recyclables may not be collected in vehicles designed to compact materials or with compaction specifications that could crush or otherwise render the recyclable material non-marketable.*" (P. exhibit 3; city exhibit 1; section 3.3(d) of bid solicitation no. 2001-70.) (emphasis supplied) Specifically, Waste Management's bid provides for five Mack chassis with Recycle Pac bodies. (N.T. 11/20/01, pp. 48-49.) Of the five vehicles Waste Management designated in its bid for commingled recyclable collection, two of the vehicles would be new 2002 Recycle Pac II models, two of the vehicles would be 2000 Recycle Pac models and one of the vehicles would be a 1999 Recycle Pac model. (P. exhibit 6; N.T. 11/20/01, pp. 127, 206.) Recycle Pac and Recycle Pac II vehicles are specifically designed to collect commingled

recyclables and not to compact solid waste. (N.T. 11/20/ 01, pp. 67, 74-75, 80-81, 100, 125, 154-56, 160, 192; N.T. 3/18/02, pp. 143, 189.)

Plaintiffs argue that the Recycle Pac and the Recycle Pac II are "vehicles designed to compact materials" and thus are prohibited from use in the City of Allentown's solid waste collection and recycling contract pursuant to section 3.3(d) of bid solicitation no. 2001-70. Plaintiffs further contend that J. P. Mascaro was at a disadvantage when it bid all non-compaction vehicles in response to bid solicitation no. 2001-70, since compaction vehicles are designed for high production, high density work and are more cost effective than non-compaction vehicles. (N.T. 11/20/01, pp. 38, 51, 81-82, 185; N.T. 3/18/02, pp. 190, 193.) We cannot agree with plaintiffs' arguments.

The phrase "vehicles designed to compact materials" embodied in section 3.3(d) of bid solicitation no. 2001-70 cannot be read in a vacuum, as the plaintiffs desire to so do. Section 3.3(d) states that "commingled recyclables may not be collected in vehicles designed to compact materials or *with compaction specifications that could crush or otherwise render the recyclable material non-marketable.*" (Section 3.3(d) of bid solicitation no. 2001-70.) (emphasis supplied) Moreover, section 4.3(g) of bid solicitation no. 2001-70 provides in pertinent part:

*"Commingled recyclables may not be collected in vehicles designed to compact solid waste or with compaction specifications that could crush or otherwise render the recyclable materials non-marketable.* All recycling collection vehicles shall be completely enclosed and shall be designed to prevent spillage of recyclables." (P. ex-

hibit 3; city exhibit 1; section 4.3(g) of bid solicitation no. 2001-70.) (emphasis supplied) This language was recommended to the City of Allentown on July 24, 2001, by Wayne DeFeo, an independent consultant, because certain recycling vehicles have some light or modest compaction qualities. (N.T. 3/18/02, pp. 45, 99-100, 135-36, 138, 182-83; city exhibit 14.)

Furthermore, on September 13, 2001, the City of Allentown issued an addendum no. 2 in order to clarify certain issues. (City exhibit 1.) One issue that arose dealt with the issue of the collection of recyclables:

"Question: Section 3.3d of the instructions for bidding—recycling trucks—with regard to compaction, clarification is needed on compaction specifications that are acceptable. We currently use compaction vehicles for recycling collection.

"Answer: As stated in section 4.3g, *'Commingled recyclables may not be collected in vehicles designed to compact solid waste or with compaction specifications that could crush or otherwise render the recyclable materials non-marketable.'* Todd Heller Inc., our designated market for commingled recyclables, will not accept compacted recyclables. Compaction capable vehicles are permitted for paper collections." (City exhibit 1; city exhibit 3.) Addendum no. 2 was generated as a result of questions that arose from the mandatory pre-bid conference held on September 6, 2001, at which all prospective bidders for the municipal solid waste and recycling contract were required to appear.

The purpose of addendum no. 2 was to clarify and explain what vehicles were permitted in the collection

of commingled recyclables in the City of Allentown. The record evidence revealed that the City of Allentown wanted to prohibit a contractor from utilizing rear load compacting garbage vehicles to collect the City of Allentown's commingled recyclables. (N.T. 11/20/01, pp. 236, 249; N.T. 3/18/02, pp. 43, 46, 136.) The desired prohibition stemmed from the fact that the compaction rate on a garbage truck is substantially greater than the compaction force on a recycling vehicle. (N.T. 3/18/02, pp. 130-41, 143, 189.) Indeed, the compaction rate on a garbage truck would render the commingled recyclables non-marketable. (N.T. 11/20/01, pp. 249-50; N.T. 3/18/02, pp. 139-41, 143.)

However, in bid solicitation no. 2001-70, the City of Allentown did not want to prevent the contractor from utilizing recycling vehicles with modest compaction capabilities that do not crush the commingled recyclables to the degree that they are rendered non-marketable. (N.T. 11/20/01, p. 236; N.T. 3/18/02, pp. 143, 191.) *Sections 3.3(d) and 4.3(g) of bid solicitation no. 200170 and addendum no. 2 all recognize marketability of commingled recyclables as the key element.* (P. exhibit 3; city exhibit 1; city exhibit 3; sections 3.3(d) and 4.3(g) of bid solicitation no. 2001-70.) There is no blanket prohibition against all compaction vehicles. In fact, three of the four bidders designated compaction vehicles for the collection of commingled recyclables. (N.T. 11/20/01, pp. 26, 84, 282; N.T. 3/18/02, pp. 54, 56, 142; city exhibit 8; city exhibit 9.)

The City of Allentown has contracted with Todd Heller Inc. to accept the commingled recyclables that are col-

lected from the City of Allentown. (N.T. 11/20/01, pp. 75-76, 177.) Todd Heller Inc. accepts commingled recyclables that are collected in Recycle Pac and Recycle Pac II compaction vehicles. (N.T. 11/20/01, pp. 76, 178; N.T. 3/18/02, p. 221.) Crushed plastics are still marketable. (N.T. 11/20/01, pp. 158, 180; N.T. 3/18/02, p. 191.) There is always some degree of glass breakage, as breakage occurs even in open non-compaction vehicles. (N.T. 11/20/01, pp. 158-59, 181-82, 188; N.T. 3/18/02, p. 144.) The marketability of materials coming out of a Recycle Pac compaction vehicle and the older style vehicle is basically equivalent. (N.T. 11/20/01, pp. 182-83; N.T. 3/18/02, pp. 144, 191.)

A plain reading of sections 3.3(d), 4.3(g) and addendum no. 2 clearly indicates that compaction vehicles with modest compaction capabilities that do not crush the commingled recyclables to the degree that they are rendered non-marketable are acceptable in bid solicitation no. 2001-70. Consequently, Waste Management's designation of the Recycle Pac and Recycle Pac II vehicles, with modest compaction capabilities, for the collection of commingled recyclables, complies with all requirements of bid solicitation no. 2001-70.

Next, plaintiffs allege that Waste Management failed to comply with bid solicitation no. 2001-70 by neglecting to supply delivery guarantees by the truck chassis manufacturers. While it is true that Waste Management did not provide delivery guarantees by the manufacturers of the chassis, we cannot agree with plaintiffs' contention that said failure constitutes a bid defect.

Initially we note that section 1.7(d) of bid solicitation no. 2001-70 states:

"All bidders shall submit with his proposal, a description of all equipment to be used in the performance of the proposed contract. Each bidder must specify the number and type of all collection truck bodies, cabs and chassis and other equipment as specified in section 4.3. The bidder shall supply detailed inventories, including photographs of the equipment currently owned or leased and all accessories by type, model, year of manufacture, and anticipated remaining useful life as of the date of the inventory sheet. All leased equipment shall be listed separately; the time remaining on each leased piece of equipment and options of renewal, where applicable, shall be stated. Complete descriptions of all new equipment to be acquired to accomplish this contract must be provided. *Delivery guarantees by manufacturers shall be attached to the bid document.*" (P. exhibit 3; city exhibit 1; section 1.7(d) of bid solicitation no. 2001-70.) (emphasis supplied) The purpose of requiring a delivery guarantee to be attached to the bid documents is to assure that any new equipment that is purchased will be delivered on time prior to the performance of the contract. (N.T. 3/18/02, pp. 13-14.)

In response to section 1.7(d) of bid solicitation no. 2001-70, Waste Management attached to the bid documents an October 2, 2001 letter delivery guarantee from Dempster Equipment which is a manufacturer of recycling vehicles: "The following is to acknowledge that Dempster Equipment will be able to deliver six Dempster recycle trucks to Allentown, PA by the required date to

meet a June 1, 2002 start-up at that facility." (P. exhibit 6; N.T. 11/20/01, p. 49.) In particular, Dempster Equipment manufactures the body of the vehicle. (N.T. 11/20/01, pp. 49-50, 66, 114, 128, 204.)

Waste Management also attached to the bid documents an October 2, 2001 letter delivery guarantee from McNeilus Companies Inc., a manufacturer of the body of the vehicles:

"The following letter is to acknowledge that McNeilus Companies Inc. will provide delivery of eight 32 cubic yard McNeilus rear loaders and three 25 cubic yard McNeilus rear loaders to your Allentown, PA facility prior to a required contract start-up date of June 1, 2002. Purchase orders and chassis will need to be provided to McNeilus Companies Inc. no later than April 1, 2002. (City exhibit 6.)

The evidence presented at the time of trial revealed that in practice, delivery guarantees are sought from the *manufacturer of the body* of the vehicle and not the manufacturer of the vehicle's chassis. (N.T. 3/18/02, pp. 151, 169, 173, 175-76, 200-201.) The rationale behind this practice is that a manufacturer is not going to deliver a body without a chassis attached to it. (N.T. 3/18/02, pp. 151, 169, 173, 175-76, 200-201.) In other words, the guarantee is given for the entire vehicle and not each component part. (N.T. 3/18/02, pp. 155, 175-76, 200-201.)

Indeed, bid solicitation no. 2001-70 does not require a delivery guarantee from the manufacturer of each component of the vehicles.[5] Instead, a delivery guarantee for

---

5. To find otherwise would lead to an absurd result.

the entire vehicle is sought through the manufacturer of the body of the vehicle. Consequently, section 1.7(d) of bid solicitation no. 2001-70 merely requires delivery guarantees from the manufacturers of the bodies and not each component part, including chassis. (P. exhibit 3; city exhibit 1; section 1.7(d) of bid solicitation no. 2001-70.) Therefore, Waste Management's bid complies with the purpose and the letter of section 1.7(d) of bid solicitation no. 2001-70.

Next, plaintiffs argue that Waste Management's bid did not comply with section 4.2(a) of bid solicitation no. 2001-70 dealing with a safety training program. Specifically, section 4.2(a) of bid solicitation no. 2001-70 provides:

"Bidders shall submit a *description* of a safety training program with regard to all employees engaged in the collection or transportation of solid waste or recycling within the City of Allentown. At a minimum, a safety program shall include training components which comply with the following mandatory and industry recommended safety standards as found in the latest version of US DOT, PA DOT, OSHA and ANSI Z245 industry standards, with regard to the following training areas:

• Commercial motor vehicle operations
• Collection crew safety
• Commercial container handling
• Collection and transfer vehicles
• Unloading procedures at treatment, processing and disposal facilities." (P. exhibit 3; city exhibit 1; section 4.2(a) of bid solicitation no. 2001-70.) (emphasis supplied) A plain reading of the aforementioned unambigu-

ous provision indicates that bid solicitation no. 2001-70 does not require that a complete safety plan be submitted by each bidder. (Section 4.2(a) of bid solicitation no. 2001-70; N.T. 11/20/01, pp. 239, 269, 274; N.T. 3/18/02, pp. 145-46.) Instead, section 4.2(a) of bid solicitation no. 2001-70 only requires the submission of a general *description* of a safety plan. (Section 4.2(a) of bid solicitation no. 2001-70; N.T. 11/20/01, pp. 239, 269, 274; N.T. 3/18/02, pp. 145-46.) Such general language aids in opening the bidding field to a wide audience while still assuring that the bidders are responsible trash haulers with a concern for safety. (N.T. 11/20/01, pp. 273-74; N.T. 3/18/02, p. 146.)

In response to section 4.2(a) of bid solicitation no. 2001-70, Waste Management indicated:

"Attached you will find our general training guidelines for health, safety and transportation.

"A specific plan will be developed which adheres to these guidelines and is tailored to the Allentown city contract. Such plan will be submitted to the city for review and comment prior to start-up." (P. exhibit 6; N.T. 11/20/01, p. 221.) Thereafter, Waste Management attached a two-page description of its safety plan. (P. exhibit 6; city exhibit 6.) Waste Management's submission complied with the purpose and the clear requirement language of section 4.2(a) of bid solicitation no. 2001-70.

Next, in their amended complaint,[6] plaintiffs allege that Waste Management's bid is defective because it failed to comply with section 4.3(g) of bid solicitation

---

6. Plaintiffs did not present evidence at the hearing on the preliminary injunction or at the non-jury trial in support of this allegation.

no. 2001-70. In particular, plaintiffs claim that Waste Management failed to identify one-half of its vehicles as new as required by section 4.3(g) of bid solicitation no. 2001-70. This court finds plaintiffs' argument to be factually flawed.

We note that section 4.3(b) of bid solicitation no. 2001-70 provides as follows:

"At the beginning of the contract period, at least one-half of the packer and recycling collection vehicles (and boxes) must not be older than three years; and one-half of the packer and recycling collection vehicles (and containers if applicable) shall be new." (P. exhibit 3; city ex. 1; section 4.3(b) of bid solicitation no. 2001-70.) A plain reading of section 4.3(g) of bid solicitation no. 2001-70, municipal solid waste and recycling collection services, indicates that half of *all designated vehicles* must be new 2002 models, while the other half must not be older than 1999 models. (Section 4.3(g) of bid solicitation no. 2001-70; city exhibit 1; P. exhibit 3; N.T. 3/18/02, pp. 147, 226.)

In response to this criterion, Waste Management bid nine 2002 model vehicles, four 2000 model vehicles and five 1999 model vehicles. (City exhibit 6.) Specifically, Waste Management bid two new 2002 Mack LE613 chassis with Recycle Pac II bodies, seven new 2002 Mack MR688S chassis with McNeilus bodies, two 2000 model Mack LE613 chassis with Recycle Pac bodies, one 2000 model Rat Pack rear loader, one 2000 model Mack MR688S chassis with McNeilus body, one 1999 model Mack LE613 chassis with Recycle Pac body, three 1999 model Mack MR688S chassis with Dempster body and

one 1999 model Mack chassis with stake body. (City exhibit 6.) Consequently, Waste Management's bid complies with section 4.3(g) of bid solicitation no. 2001-70 in that one-half of the vehicles bid by Waste Management are new and one-half of the vehicles are not older than three years.

Even assuming, arguendo, that any of the aforementioned four allegations of error was determined to be a bid defect in Waste Management's submission, the City of Allentown's award of the solid waste collection and recycling contract to Waste Management should not be set aside and invalidated. Indeed, section 1.13(a) of bid solicitation no. 2001-70 specifically confers to the City of Allentown the right to waive informalities and minor irregularities in the offer. (Section 1.13(a) of bid solicitation no. 2001-70.)

Furthermore, this court is mindful of the fact that underlying the competitive bidding process is the requirement of bid responsiveness which assures equal footing among competing bidders in furtherance of core legislative objectives. *Gaeta v. Ridley School District,* 567 Pa. 500, 788 A.2d 363, 367 (2002). "Fairness lies at the heart of the [competitive] bidding process and all bidders must be confronted with the same requirements and be given the same fair opportunity to bid in free competition with each other." *Shaeffer v. City of Lancaster,* 754 A.2d 719, 723 (Pa. Commw. 2000). This requirement for competitive bidding exists to invite competition and "to guard against favoritism, improvidence, extravagance, fraud and corruption in the award of municipal contracts."

*Conduit & Foundation Corp. v. City of Philadelphia,* 41 Pa. Commw. 641, 646, 401 A.2d 376, 379 (1979).

However, the Pennsylvania Supreme Court recently has held that a municipality has the discretion to accept a non-compliant bid so long as the bid defect is a mere irregularity that does not deprive the municipality of adequate assurance that the contract will be fulfilled and the bidder does not receive a competitive advantage by its non-compliance.[7] *Gaeta,* 788 A.2d at 367-68; *Rainey v. Borough of Derry,* 163 Pa. Commw. 606, 614, 641 A.2d 698, 702 (1994). Indeed, the Pennsylvania Supreme Court recognized that municipal authorities are afforded latitude by the courts when "confronted with a non-compliant bid that it might choose to consider to achieve effective utilization of the public fisc." *Gaeta,* 788 A.2d at 367. In the present case, Waste Management did not receive a competitive advantage over the other bidders by its alleged failure to comply with section 1.7(d) (delivery guarantees), section 4.2(a) (description of safety plan) and/or section 4.3(b) (age of equipment). In fact, plaintiffs failed to allege any facts to support such a contention. At most, this is a case of "mis-descriptions" that had no effect on the bidding process.

Finally, the plaintiffs contend that the City of Allentown abused its discretion and violated bid solicitation

---

7. A municipality is precluded from waiving the requirements of a bid where the requirements are the subject of legislative pronouncement particularizing the manner in which the contract is to be made. *Gaeta,* 788 A.2d at 368. In the case at hand, the bid requirements challenged by the plaintiffs are not required by any statute or ordinance and the plaintiffs do not assert such a proposition.

no. 2001-70 when, in determining the lowest bidder, it selected a one-year term for an optional service while using a two-year term for the base contract period. Specifically, plaintiffs argue that the City of Allentown erred when, in awarding the contract to Waste Management, the City of Allentown selected a one-year term for the optional service of city facilities trash and recycling collection. We do not find that the City of Allentown abused its discretion.

Initially this court notes that bid solicitation no. 2001-70 does not require the City of Allentown to award a service option for the same term as the base contract. Furthermore, section 1.13 of bid solicitation no. 2001-70 sets forth the criteria for awarding the contract:

"1.13 Award criteria

"(a) The city reserves the right to reject any and all offers and to waive informalities and minor irregularities in offers received.

"(b) *The city reserves the right to award or reject any or all options.* The city also reserves the right to award options and/or contract extensions at a later date to the successful bidder.

"(c) The lowest bid will be determined by the total of the base bid and any options selected by the city at the time of award.

"(d) The city, at its discretion only, may, at its option, add services to or delete services at any time from the work provided by this contract as may serve its best interest. The resulting increase or decrease will be negotiated between the contractor and the city." (City exhibit 1; P. exhibit 3; section 1.13 of bid solicitation no.

2001-70.) (emphasis supplied) Indeed, section 1.13(b) of bid solicitation no. 2001-70 grants to the City of Allentown the right to award or reject any and all options.

Moreover, the City of Allentown has the right to award options at a later date and to add or delete services from the contract at any time as may serve the interests of the City of Allentown. (P. exhibit 3; city exhibit 1; section 1.13(d) of bid solicitation no. 2001-70.) Testimony revealed that the reason the City of Allentown chose a one-year term for the city facility trash and recycling service option was that the City of Allentown wanted to study whether it could internally handle the city facility trash and recycling collection on a more cost efficient basis than under the public contract. (N.T. 11/20/01, pp. 214-15.) No evidence was proffered by the plaintiffs to suggest that the one-year term was not in the best interests of the City of Allentown. Bid solicitation no. 2001-70 confers to the City of Allentown broad discretion and wide latitude in its selection process. Therefore, the city had the right to select a one-year term for the city facility trash and recycling service option, while choosing a two-year term for the base contract and the other options.

Furthermore, it should be noted that even if the City of Allentown had chosen a two-year term for the city facility trash and recycling service option, Waste Management would still have been the lowest bidder. (Waste Management exhibit 3; N.T. 11/20/01, p. 218.) Also of importance, the use of the one-year option term to determine bid prices was applied uniformly to all four bidders. Therefore, Waste Management did not receive any

competitive advantage by the City of Allentown's choice of the term of this option. Therefore, the City of Allentown did not abuse its discretion in finding Waste Management to be the lowest responsible bidder.

Based on the foregoing, this court finds that the plaintiffs have failed to establish that the City of Allentown manifestly and flagrantly abused its discretion or acted in bad faith by awarding the solid waste collection and recycling contract to Waste Management.[8] Accordingly, plaintiffs' request for permanent injunctive relief to invalidate the City of Allentown's award of the solid waste collection and recycling contract to Waste Management is denied. This court will not disturb the City of Allentown's determination that Waste Management is the lowest responsible bidder.

## DECREE NISI

Now April 15, 2002, after a non-jury trial conducted before the undersigned on March 18, 2002, and upon consideration of the record, the findings of fact and conclusions of law filed by the parties and after oral argument on April 8, 2002, and for the reasons expressed in the accompanying adjudication, it is hereby decreed that this decree is entered in favor of defendants, City of Allentown and Waste Management of Pennsylvania Inc., and against plaintiffs, Solid Waste Services Inc. d/b/a J.P.

---

8. The beneficiaries of the award of the contract are the citizens of Allentown who will benefit not only from the cost savings, but also from the quality of service as reflected in the laudatory comments of the surrounding communities that have switched from J. P. Mascaro to Waste Management. (City exhibit 10.)

Mascaro & Sons M. B. Investments and Francine Ambrosino.

It is further decreed that plaintiffs' request for permanent injunctive relief to invalidate the City of Allentown's award of the solid waste collection and recycling contract to Waste Management of Pennsylvania Inc. is denied.

It is further decreed that this decree shall become final unless post-trial motions are filed pursuant to Pennsylvania Rule of Civil Procedure 227.1(c)(2) within 10 days of the filing of the adjudication in the within matter.